# UNITED STATES DISTRICT COURT
### for the
Middle District of North Carolina



| | |
|---|---|
| United States of America | ) |
| v. | ) |
| | ) Case No. |
| Khuram Choudhry | ) |
| | ) 1: 25MJ172 |
| | ) |
| | ) |
| _____ | ) |
| *Defendant(s)* | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __April 25, 2025 to May 2, 2025__ in the county of __Durham and elsewhere__ in the __Middle__ District of __North Carolina__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 846 | Conspiracy to Distribute Cocaine |

This criminal complaint is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

<br>

| | |
|---|---|
| | /s/ Shaylin S. Laure |
| | *Complainant's signature* |
| On this day, the applicant appeared before me via reliable electronic means, that is by telephone, was placed under oath, and attested to the contents of this Criminal Complaint and attached affidavit in accordance with the requirements of Fed. R. Crim. P. 4.1. | Shaylin S. Laure, Special Agent FBI |
| | *Printed name and title* |

Date: __5/2/2025__

City and state: __Winston-Salem, North Carolina__

Hon. Joi Elizabeth Peake
*Printed name and title*

*Judge's signature*

# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Shaylin Laure, Special Agent (SA), Federal Bureau of Investigation (FBI), Charlotte Division (CE), Raleigh Resident Agency, Cary, NC, being duly sworn, states the following:

## Affiant Background

1. I am a Special Agent for the Department of Justice, Federal Bureau of Investigation (DOJ/FBI), and have been so employed for five years. Thus, I am a "Federal Law Enforcement Officer" within the meaning of Federal Rules of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General. As such, I am empowered to conduct investigations of, and to make arrests for, violations of federal law. Further, I am an investigative or law enforcement officer of the United States, within the meaning of Section 2510(7) of Title 18, United States Code, and am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code.

2. I am currently assigned to the Raleigh/Durham Safe Streets Task Force (RDSSTF) of the Charlotte field office. As part of my duties, I am responsible for investigation of violations of Federal laws, including those pertaining to violent street gangs and narcotics distribution. Prior to my employment with the FBI, I worked as a deputy for the Kent County Sheriff's Department from 2014 through 2019. Since December 6, 2019, I have conducted and participated in investigations involving one Title III wire interception, as well as extensive participation in physical surveillance, the execution of search warrants, and the execution of arrest warrants. These

Case 1:25-cr-00188-WO    Document 1    Filed 05/02/25    Page 2 of 10

investigations have led to multiple arrests of individuals involved in illegal drug activity, firearms violations, and criminal street gangs in Durham, North Carolina. Additionally, I have managed eight confidential human sources (CHSs) as a primary handling agent and have utilized sophisticated electronic surveillance methods in conjunction with utilizing these and other CHSs.

**Introduction**

3. This affidavit is made in support of a complaint against **KHURAM CHOUDHRY** (hereinafter "Choudhry") of Morrisville, North Carolina, charging him with the following:

a. 21 U.S.C. § 846: conspiracy to distribute cocaine.

**Background of the Investigation**

4. RDSSTF is currently investigating the drug distribution organization led by KEVIN JOHNSON in the Raleigh-Durham area and elsewhere. JOHNSON is distributing large amounts of cocaine and fentanyl.

5. On March 24, 2025, an order for the interception of wire and electronic communications was signed by Honorable Judge Eagles in the Middle District of North Carolina for phone number 919-278-8782 (hereinafter referred to as TT1) and wire communications for phone number 984-327-6595 (hereinafter referred to as TT2). Both of these phone numbers were utilized by KEVIN JOHNSON (hereinafter referred to as "Johnson").

6. Throughout the period of wire and electronic interception of Johnson, it was confirmed that Johnson is, in fact, distributing large amounts of cocaine and fentanyl in the Raleigh-Durham area. Also identified through wire and electronic interception of Johnson was his primary supplier of the cocaine and fentanyl, Choudhry.

7. On April 1, 2025, at approximately 11:26pm JOHNSON (TT1) made a call to an associate where JOHNSON stated, "It took me a long time to get the 'wop' [UI], but that shit paid

2

off man…On my momma life. It ain't, it wouldn't, it's not gonna take you as long as it took me, like to do anything. Cause I ain't… have nobody to do that. I had to go all the way to the trenches. Like, getting it from nothing, like…like, you know what I'm saying. So, only reason why I really got to expand man. I don't deal with too many people man. I, I can't, cause niggas ain't real. And motherfuckers they tryin to God damn, motherfuckers don't really be trying to get no money. Like real talk man. [UI] I just pulled up, I was in the wrong, in the, in the right car at the right time. My nigga, one of my niggas, man [UI], my nigga, he an Arab [known to be CHOUDHRY]. He just had like, he just had like a life sentence, right. He was at Bertie [Bertie Correctional Institute] with me. He went home he did like 13 years. He went home [UI], I came home three years after he did. And my lawyer got us together, 'cause he got trucks and shit. So, when I got, when they [UI] when they hit my crib fucking with dads and them and I lost shit and I needed some work and I went and got on the block, know what I'm sayin? And they [UI] and that shit put me in the game... [UI] $1,000 and [UI] and takin nigga's shit and killin and shootin niggas [UI], so then they knew my prison stay was [UI], right, [UI] but it really was." Based on training, knowledge, experience, and this investigation, your affiant is aware that JOHNSON was discussing meeting CHOUDHRY in Bertie Correctional Institute, where they were both housed from July 2017 through May 2018. Through this investigation, I know CHOUDHRY owns a trucking LLC that is registered in his name.

8.    On April 2, 2025, JOHNSON received an incoming call (TT1) and the caller asked JOHNSON to meet him. This meeting was surveilled, and agents observed JOHNSON meet with this male behind the EconoLodge on Hwy55 in Durham and conduct a hand-to-hand transaction. Based on training, knowledge, and experience your affiant believes that JOHNSON provided drugs to this male. This male, known to agents from this investigation and court-authorized wire

3

interceptions, was a frequent drug customer of JOHNSON's. After this deal, JOHNSON's geolocation data indicated that he traveled to CHOUDHRY's apartment which was located at 5710 Arringdon Park Drive, apartment 1402, Morrisville.

9. On April 22, 2025, the Honorable Catherine C. Eagles, Chief United States District Judge for the Middle District of North Carolina, reauthorized the interception of wire communications to and from a telephone with the number (984) 278-8782 (TT1), a phone known to be used by KEVIN JOHNSON; the interception of wire communications to and from a telephone with the number (984) 327-6595 (TT2), a phone known to be used by KEVIN JOHNSON; authorized the interception of wire communications to and from a telephone with the number (919) 454-6301 (TT3), a phone known to be used by KHURAM CHOUDHRY; and authorized the interception of wire communications to and from a telephone with the number (984) 278-8570 (TT4), a phone known to be used by KEVIN JOHNSON.

### Probable Cause for a Criminal Complaint against Khuram Choudhry

10. On April 25, 2025, at approximately 1600 hours, law enforcement investigators began conducting physical surveillance at the apartment complex of KHURAM CHOUDHRY located at 5771 Arringdon Park Drive in Morrisville, NC which is in Durham County. At approximately 1615 hours CHOUDHRY and his girlfriend, "W.R." were observed leaving together in a Chevrolet Malibu registered to W.R. They were not in possession of any bags at this time. Based on CHOUDHRY's phone geo-location data, they traveled to the area of Highway 55 and Interstate 40. Approximately 30 minutes later, CHOUDHRY and W.R. returned to the apartment complex. CHOUDHRY was observed carrying two bags from the vehicle to his apartment that he was not in possession of prior to going to the storage unit. Based on court-authorized geolocation data,

4

CHOUDHRY and W.R. traveled to SecureCare Self Storage located at 5311 NC Highway 55 in Durham[1].

11.  On April 25, 2025, approximately 10 minutes after CHOUDHRY and W.R. returned from the storage unit and entered the apartment with the two bags, another male, later identified as DWIGHT DEWAYNE CHANDLER JR, was observed entering the apartment complex. At approximately 1705 hours, CHOUDHRY and CHANDLER met in front of CHOUDHRY's apartment and then walked inside. Just six minutes later, CHANDLER was observed exiting the apartment carrying a white garbage bag that he was not seen entering the apartment with. CHANDLER took the trash bag with him as he entered his vehicle. CHANDLER sat in his vehicle in the apartment parking lot and was observed by surveillance units manipulating something in the vehicle. While still in the apartment parking lot, CHANDLER exited his vehicle, now holding a grey cloth bag while talking on the phone. CHANDLER returned to his car and then exited to the lot. Based on training, knowledge, and experience your affiant believes that CHANDLER transferred narcotics from the white bag provided by CHOUDHRY to the grey cloth bag that he had inside of his vehicle.

12.  Investigators followed CHANDLER as he exited the apartment complex and drove west on Chin Page Road in Durham, North Carolina. CHANDLER drove for approximately five minutes and pulled into the parking lot of "The House" restaurant located at 4310 South Miami Blvd, Durham NC.

---

[1] On May 1, 2025, an admin subpoena was served on SecureCare Self Storage for information concerning any accounts associated with CHOUDHRY. The business provided records indicating that CHOUDHRY was renting storage unit # 216. Based on training, knowledge, and experience your affiant knows narcotics traffickers to utilize storage units, in conjunction with their residence, as a place to maintain narcotics and illicit proceeds.

13. CHANDLER and an unknown male spoke in the parking lot for approximately thirty-five minutes before investigators observed CHANDLER retrieve the grey cloth bag from his vehicle. CHANDLER stood at the rear of his vehicle and at approximately 1845 hours a small green Kia SUV entered the parking lot and was waved over by CHANDLER. CHANDLER was observed entering the Kia SUV holding the grey cloth bag. Moments later the Kia SUV and the Chrysler 300 both left the parking lot and split up approximately one mile later. Investigators continued following CHANDLER in the green Kia SUV. The Kia traveled north on the NC147 Freeway in the direction of downtown Durham.

14. Deputies with the Durham County Sheriff's Office conducted a traffic stop on the Kia for NC Chapter 20 (traffic) violations as the vehicle exited NC147 and turned south on Fayetteville Street. The driver pulled over immediately. The Kia was driven by an Asian female that was driving for the ride-share company "Lyft" and CHANDLER was a fare that she had picked up.

15. After Deputies identified the driver and CHANDLER, they asked the owner of the vehicle for, and were granted, consent to search the Kia for contraband. CHANDLER denied ownership of the grey cloth bag in the rear seat. Additionally, a K-9 scan of the vehicle indicated the presence of narcotics. A search was conducted and inside the grey cloth bag, deputies located a "brick" of suspected cocaine that weighed approximately 1287.2 grams as packaged, and another smaller plastic bag of suspected cocaine weighing approximately 29.0 grams as packaged. Both packages field tested positive for cocaine. The outside of the larger package had been smeared with a substance that appeared to be petroleum jelly. Based on training, knowledge and experience your affiant knows that narcotics trafficker will often place things like petroleum jelly on packages of narcotics to thwart detection by police K9 units. Deputies seized both packages of suspected cocaine as well as a cell phone belonging to CHANDLER. CHANDLER was transported to the

6

Durham County Detention Facility and charged with North Carolina narcotics trafficking related offenses. CHANDLER's bond was set at one million dollars.

16. Based on training, knowledge, experience and the documented surveillance operation, your affiant is confident that the narcotics seized from CHANDLER were provided to him by CHOUDHRY.

17. Through the court-authorized monitoring of CHOUDHRY's telephone (TT3), investigators have determined that CHOUDHRY has planned to go to New Jersey to meet his source of supply and purchase a large quantity of narcotics. Surveillance units have observed CHOUDHRY preparing a 20' box truck and a semi-truck, registered to his trucking company for this trip. He is planning on making this trip with J.C. This is more fully described in the paragraphs below.

18. On April 30, 2025, CHOUDHRY (TT3) received a call. In this call CHOUDHRY explained that he was being undercut by the guy in New Jersey. CHOUDHRY referred to getting "tires" from them. In this call he refers to a high-ranking Blood gang member in North Carolina that he deals with that claimed he could do, "50 [kilograms] a month quick…no problem." CHOUDHRY spoke about money issues between himself and this male and then claimed he would show screen images saved on his phone of these conversations. Based on training, knowledge and experience your affiant believes that CHOUDHRY is upset with his drug supplier in New Jersey but is scheduled to travel there to pick a large load of "tires" (kilograms of cocaine).

19. On April 30, 2025, CHOUDHRY (TT3) placed a call to his girlfriend, W.R. In this call CHOUDHRY explained that he was about to make a play[2] and that would get paid out for six months. Based on training, knowledge and experience your affiant believes that CHOUDHRY

---

[2] Based on training, knowledge, and experience your affiant knows "making a play" to be terminology used by those involved in narcotics to refer to a drug deal.

Case 1:25-cr-00188-WO    Document 1    Filed 05/02/25    Page 8 of 10

described a planned trip to New Jersey to pick up an extremely large amount of cocaine that would allow them to make money from its sale for six months.

20. On May 1, 2025, CHOUDHRY, at approximately 2100 hours, departed his residence (5710 Arringdon Park Drive, Apt 1402, Morrisville, NC) and met J.C. at the SecureCare Self Storage unit located at 5311 NC Hwy 55, Durham, NC (Storage unit 216). They were at the storage unit for approximately five minutes. When CHOUDHRY departed the storage unit, he placed a call (TT3) to J.C. CHOUDHRY stated, "That's my life right there bro." J.C. replied, "Say no more bro…We'll hit it in the morning." Based on training, knowledge, experience, and involvement in this investigation, your affiant is confident that CHOUDHRY met with J.C. at the storage unit to retrieve bulk cash in preparation for their trip in the morning to New Jersey to purchase a large quantity of cocaine from CHOUDHRY's supplier. This investigation has shown that J.C. is a very close associate of CHOUDHRY's and actively involved in the conspiracy to distribute large amounts of cocaine.

## Conclusion

21. Based on the forgoing facts, I respectfully submit that there is probable cause to believe that on or about April 25, 2025 through May 2, 2025, in Durham County, Khuram Choudhry did knowingly conspire to distribute a controlled substance, that is cocaine, in violation of Title 21, United States Code, Section 846.

/s/Shaylin M. Laure
Shaylin M. Laure, Special Agent
Federal Bureau of Investigation
United States Department of Justice

Dated: May, 2 2025

Pursuant to Rule 4.1 of the Federal Rules of Criminal Procedure, the affiant appeared before me via reliable electronic means (telephone), was placed under oath, and attested to the contents of this written affidavit.

Joi Elizabeth Peake
United States Magistrate Judge
Middle District of North Carolina